UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DMO NORWOOD LLC d/b/a Dan O'Brien Kia Norwood,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>KIA AMERICA, INC.,<br><br>　　　　　Defendant. | \*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*　Civil Action No. 22-cv-10470-ADB<br>\*<br>\*<br>\*<br>\*<br>\*<br>\* |

**MEMORANDUM AND ORDER ON MOTION TO AMEND**

BURROUGHS, D.J.

　　Plaintiff DMO Norwood LLC d/b/a Dan O'Brien Kia Norwood ("DMO Norwood") filed an eight-count complaint against Kia America, Inc. ("Kia"), in Norfolk Superior Court on March 25, 2022, in which it alleged that Kia's audit of DMO Norwood and termination of the Dealer Sales and Services Agreement ("Dealer Agreement") violated various provisions of Massachusetts General Laws Chapter 93B (Counts I, II, IV, V, and VI) and breached the parties' Dealer Agreement (Count III, VII), and sought preliminary and permanent injunctive relief (Count VIII). [ECF No. 1 ¶ 1; ECF No. 1-2 ("Compl.") ¶¶ 6, 87–151]. Currently before the Court is Kia's motion to amend its answer to add counterclaims and counterclaim defendants ("Motion to Amend"). [ECF No. 52]. For the following reasons, Kia's Motion to Amend is GRANTED in part and DENIED in part.

I.　BACKGROUND

　　A.　Statutory Scheme

　　Massachusetts General Laws Chapter 93B, Massachusetts' so-called "Dealers' Bill of Rights," Wagner and Wagner Auto Sales, Inc. v. Land Rover N. Am., Inc., 547 F.3d 38, 40 (1st

Cir. 2008), "regulates business practices between motor vehicle manufacturers, distributors and dealers." Petrosyan v. Maserati N. Am., Inc., No. 19-cv-12425, 2020 WL 2104789, at *3 (D. Mass. May 1, 2020). The statute is "aimed primarily at protecting motor vehicle dealers from injury caused by the unfair business practices of manufacturers and distributors with which they are associated, generally in a franchise relationship." Mass. State Auto. Dealers Ass'n v. Tesla Motors MA, Inc., 15 N.E.3d 1152, 1153 (Mass. 2014).

Section 3 of Chapter 93B makes "[u]nfair methods of competition and unfair or deceptive acts or practices" unlawful. Mass. Gen. Laws ch. 93B, § 3. These enumerated "unfair methods" and "unfair or deceptive acts or practices" include:

- "[T]erminat[ing] the franchise agreement of a motor vehicle dealer" "without good cause, in bad faith or in an arbitrary or unconscionable manner[.]" Id. § 5(a).

- "[A]udit[ing] or examin[ing] any sales or service account or activity of a motor vehicle dealer as retribution because the motor vehicle dealer exercised . . . any right pursuant to its franchise agreement." Id. § 9(i).

Section 9 imposes additional conditions on manufacturers' audits and sales incentives:

- Section 9(c) stipulates that manufacturers may "audit claims submitted by a motor vehicle dealer and paid by the manufacturer" for "sales incentive, bonus, or other claims relating to the sale of new motor vehicles or services," but may only do so "for 1 year after the date on which a claim is paid or the end of any program period, whichever is later" unless "there is evidence of fraud or if there has been fraudulent concealment . . . ." Id. § 9(c).

- Section 9(e) states that "[a] sales incentive, bonus or comparable claim relating to the sale of new motor vehicles or services submitted by a motor vehicle dealer and paid by the manufacturer . . . may be charged back to the motor vehicle dealers only if the claim was fraudulent or false, the sales were not made, the sales were not timely, or the motor vehicle dealer failed to comply with the reasonable written requirements of the manufacturer . . . in effect at the time that the claim was presented for payment." Id. § 9(e).

DMO Norwood brings claims under each of these provisions.

**B.     Factual Background**

DMO Norwood began operating as an authorized Kia Dealer on or about February 1, 2019, pursuant to a Dealer Agreement with Kia. [Compl. ¶ 6]. DMO Norwood's sole owner, Dan O'Brien, also owns Kia Dealerships in Concord, New Hampshire (DMO Auto Acquisitions, LLC d/b/a Dan O'Brien Kia of Concord ("DMO Concord")) and North Hampton, New Hampshire (DMO North Hampton, LLC d/b/a Dan O'Brien Kia of North Hampton ("DMO North Hampton")) (collectively, the "New Hampshire Entities"), as well as three other non-KIA dealerships in Massachusetts and New Hampshire. [Id. ¶¶ 9, 10; ECF No. 62 at 1].

DMO Norwood's claims arise from Kia's decision in January 2022 to terminate DMO Norwood's Dealer Agreement, following an audit of DMO Norwood's recent sales records in June 2021. See [Compl. ¶¶ 38, 44–47, 74–75]. DMO Norwood had submitted the sales records to Kia pursuant to a sales policy that provides incentives to drive specific sales, [id. ¶ 34–37], and the stated purpose of the audit was to confirm compliance with the sales policy, [id. ¶¶ 38–39]. On January 3, 2022, Kia communicated the final results of the audit, stating that roughly 20 sales were subject to chargeback, because DMO Norwood had "submitted fraudulent [retail delivery reports] to [Kia] to receive incentive credits to which the Dealership was not entitled." [Id. ¶¶ 63–66 (second alteration in original)].

Thereafter, on January 28, 2022, Kia sent DMO Norwood a "Notice of Termination" of the Dealer Agreement, citing several grounds for termination, including that DMO Norwood: "repeatedly submitted false information to [Kia] in connection with its reporting of new vehicle sales[,]" "assisted an affiliated Kia Dealership [Dan O'Brien's Concord, New Hampshire dealership] in its submission of false sales reports to [Kia,]" and "failed to furnish accurate sales information and supporting data to [Kia], both in the underlying retail delivery reports ("RDRs") and, in response to [Kia's] audit procedure." [Compl. ¶¶ 74, 75]. The Notice stated that "in

3

particular" "audits conducted by [Kia] have revealed that the Dealership has perpetrated a fraud on [Kia] through the submission of false sales information." [Id. ¶ 75].

DMO Norwood asserts that these grounds for termination of the Dealer Agreement were "pretextual,"[1] [Compl. ¶¶ 101, 109], and that the termination and the audits of DMO Norwood, DMO Concord, and DMO North Hampton were done "in retribution" for O'Brien's decision to stop contributing funds to a voluntary marketing program run by Kia, which funded promotion for all Kia dealerships in the Boston Metro Group, including DMO Norwood's Kia competitors. [Compl. ¶¶ 19–20, 43].

Kia's proposed counterclaims arise from what Kia describes as the "widespread false reporting of sales" by DMO Norwood and O'Brien, DMO Concord, and DMO North Hampton, and "an attempted cover-up of their activity." [ECF No. 53 at 3]. According to Kia, during the course of discovery it uncovered evidence that "O'Brien launched an urgent but only partially successful effort to a move a substantial number of Kia vehicles from one O'Brien Auto Group dealership to another, and to sell off over 100 Kia vehicles to a wholesaler," and that this was done to "conceal from Kia's auditor that [all three O'Brien Kia Dealerships] still had dozens of vehicles in inventory that they had previously reported to Kia as retail sales and for which they had received tens of thousands of dollars in incentive payments to which they were not entitled." [ECF No. 53-1 ¶ 37]. Kia states in its reply brief, [ECF No. 69], that it has now learned of additional allegedly fraudulent sales reports, including an allegedly false report from December 2021, which it intends to add to its allegations, [id. at 2].

---

[1] DMO Norwood asserts that at least six of the sales transactions identified in Kia's audit were properly sold and reported to Kia, and that the remaining transactions reflected "data entry errors or record-keeping oversights" for which it "agreed that incentive payments should be charged back . . . ." [Compl. ¶¶ 52–54].

### C. Procedural Background

Following the filing of the complaint on March 25, 2022, see [Compl.], Kia removed the action to this Court on March 29, 2022. [ECF No. 1]. On April 1, 2022, with the parties' agreement, the Court set a trial date of January 9, 2023, [ECF No. 14], and thereafter approved the parties' stipulation that the termination of the Dealer Agreement would be stayed pending entry of final judgment in this action.[2] [ECF Nos. 17, 19]. Kia answered DMO Norwood's Complaint on April 29, 2022 and did not raise any counterclaims. [ECF No. 23].

On June 15, 2022, the Court approved a schedule proposed by the parties that contemplated five months of discovery prior to trial. [ECF Nos. 32, 33]. The parties agreed that fact discovery would be completed by October 21, 2022, expert discovery by November 16, 2022, and all dispositive motions would be due by November 18, 2022 in advance of the January 2023 trial date. [ECF No. 32].

On September 19, 2022, a month before the close of discovery, Kia moved for leave to amend its Answer to add seven counterclaims and three counterclaim defendants, DMO Concord, DMO North Hampton, and O'Brien, as sole owner of DMO Norwood, DMO Concord, and DMO North Hampton ("Proposed Counterclaim Defendants"). [ECF Nos. 52, 53-1]. The proposed counterclaims allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Counterclaim Counts I and II), fraud (Counterclaim Count III), negligent misrepresentation (Counterclaim Count IV), conversion (Counterclaim Count V), civil conspiracy (Counterclaim Count VI), and breach of contract (Counterclaim Count VII). [ECF No. 53-1 ¶¶ 64–120].

---

[2] The parties' stipulation resolved DMO Norwood's motion to enjoin the termination of the parties' Dealer Agreement, which it initially filed in state court and then refiled in this Court. [ECF No. 11; ECF No. 18 at 1–2].

In the meantime, the New Hampshire Entities, DMO Concord and DMO North Hampton, filed administrative complaints against Kia related to "[Kia's] efforts to chargeback certain incentive payments" and "attempt to terminate" their Dealer Agreements in violation of the New Hampshire motor vehicle franchise statute, and the Court understands those complaints are currently proceeding before the New Hampshire Motor Vehicle Industry Board. [ECF No. 62 at 1–2]; see also [ECF No. 53 at 2–3; ECF No. 69 at 3–4].

**II.     DISCUSSION**

Federal Rule of Civil Procedure 15(a) provides that leave to amend generally should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "[E]ven so, [a] district court enjoys significant latitude in deciding whether to grant leave to amend." ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 55 (1st Cir. 2008). A court may deny leave to amend for reasons including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment," Foman v. Davis, 371 U.S. 178, 182 (1962), but "[t]he key consideration is whether the [non-moving party] will be prejudiced if the motion to amend is allowed[,]" Nasson v. Van Winkle, No. 91-cv-11823, 1994 WL 175049, at *1 (D. Mass. Apr. 19, 1994) (citation omitted).

"The Court may deem prejudicial an amendment that substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation." Am. Soc'y for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus, 244 F.R.D. 49, 50–51 (D.D.C.) (citation and internal quotation marks omitted), reconsideration granted on other grounds, 246 F.R.D. 39 (D.D.C. 2007); see also Zarrella v. Pac. Life Ins. Co., 809 F. Supp. 2d 1357, 1372–73 (S.D. Fla. 2011) (refusing to allow plaintiffs to add ERISA claim to their second amended complaint before

discovery commenced because it "constitute[d] an entirely new theory of liability and would require [the defendant] to undertake a different defense strategy and tactics and [would] require significant new fact and expert discovery." (third alteration in original) (citation and internal quotation marks omitted)); Acosta-Mestre v. Hilton Int'l of P.R., Inc., 156 F.3d 49, 52 (1st Cir. 1998) (finding that prejudice resulting from "a likely major alteration in trial strategy and tactics[,]" along with other factors, would support denying a motion to amend).

DMO Norwood's claims are narrowly focused on Kia's audit of DMO Norwood and its subsequent effort to terminate the parties' Dealer Agreement. Kia's proposed amendment, if allowed in its entirety, would significantly expand the case and trial, putting at issue a broad alleged pattern and practice of fraudulent activity by numerous entities and entirely new theories of liability, including complex RICO and other conspiracy claims. The Court therefore finds that allowing Kia's motion, filed only three months before the original trial date,[3] to amend its Answer to add seven new counterclaims plus various counterclaim defendants, would unduly prejudice DMO Norwood. See, e.g., Ringling Bros. & Barnum & Bailey Circus, 244 F.R.D. at 52 ("[G]iven the inherent complexity of a RICO claim generally . . . the Court finds that allowing defendant to amend its answers to assert a claim of such breadth would unleash a Hydra that would require from the court nothing short of a herculean effort in time and attention to even maintain a semblance of control over it." (citation and internal quotation marks omitted)).

---

[3] After Kia filed its Motion to Amend, the Court granted the parties' joint motion to extend case deadlines by 120 days and re-set trial for May 15, 2023. [ECF Nos. 55–57]. The Court also recently granted an additional 60-day extension from the Court's order on this Motion. [ECF No. 73]. Those extensions, which were granted to allow the parties to complete discovery on the existing claims and to allow the parties to brief and the Court to consider the Motion to Amend, do not alter the Court's analysis, since granting Kia's Motion to Amend in its entirety will only create further delays and "disrupt the timely resolution of the existing claims on the merits." EMC Corp. v. Pure Storage, Inc., 310 F.R.D. 194, 200 (D. Mass. 2015).

That being said, because the terms of the parties' Dealer Agreement and DMO Norwood's submission of allegedly fraudulent sales records and receipt of incentive payments to which it is allegedly not entitled are all squarely at issue in DMO Norwood's claims, the Court finds that Kia's breach of contract claim would not unduly expand the scope of this lawsuit. This appears to be DMO Norwood's only argument against adding this specific counterclaim.[4] The Court will therefore allow Kia to amend its Answer to add its breach of contract claim against DMO Norwood.[5]

---

[4] DMO Norwood argues that the Court should deny Kia leave to amend because it is acting in bad faith in seeking to amend its pleadings, but its discussion largely focuses on the RICO counterclaims, so it is not clear that this argument is meant to apply to Kia's breach of contract counterclaim. [ECF No. 61 at 17–20]. Regardless, the Court agrees with Kia that DMO Norwood has failed to present sufficient, non-conclusory evidence of bad faith and therefore declines to deny Kia leave to add its breach of contract counterclaim on this ground. See Channing Bete Co. v. Greenberg, No. 19-cv-30032, 2022 WL 43692, at *11 (D. Mass. Jan. 5, 2022) (quoting Sherrod v. McHugh, 249 F. Supp. 3d 85, 87 (D.D.C. 2017)) ("Preventing a party from amending [pleadings] on the basis of bad faith generally requires an affirmative showing by the nonmoving party." (citation omitted)). DMO Norwood also argues that Kia's state law tort claims are futile because they are preempted by Chapter 93B. [ECF No. 61 at 15–17]. This argument does not appear to apply to Kia's breach of contract counterclaim, see [id.], but, again, regardless, the Court will not deny Kia leave to add this counterclaim on this ground, since "Massachusetts courts do not appear to have resolved whether a dealer is preempted from bringing related common law claims in addition to c[h]. 93B claims." Aston Martin Lagonda of N. Am., Inc. v. Lotus Motorsports, Inc., No. 13-cv-11213, 2014 WL 1092864, at *5 (D. Mass. Mar. 18, 2014).

[5] The Court finds that Burford abstention would also be appropriate as to the proposed counterclaims against the New Hampshire Entities, given the ongoing proceedings before the New Hampshire Motor Vehicle Industry Board ("Board Proceedings"). "The fundamental concern in Burford is to prevent federal courts from bypassing a state administrative scheme and resolving issues of state law and policy that are committed in the first instance to expert administrative resolution." Pub. Serv. Co. of N.H. v. Patch, 167 F.3d 15, 24 (1st Cir. 1998). While Burford abstention is "the exception, not the rule," Chico Serv. Station, Inc. v. Sol P.R. Ltd., 633 F.3d 20, 29 (1st Cir. 2011) (citation and internal quotation marks omitted), abstention is appropriate where, as here, there is "the potential for federal review to interfere with state administrative policymaking" and "the existence of difficult questions of state law which bear upon important questions of public policy[,]" Nat'l Ass'n of Gov't Emps. v. Mulligan, 849 F. Supp. 2d 167, 174 (D. Mass. 2012) (citing Chico Serv. Station, 633 F.3d at 32).

The New Hampshire motor vehicle franchise statute, RSA 357-C, "*requires disputes regarding 'good cause' showings* to be litigated before the [Board]." Deere & Co. v. New Hampshire, No. 2162013CV00554, 2013 WL 9889004, at *5 (N.H. Sup. Ct. Sep. 19, 2013) (citing RSA-37-C7). RSA 357-C:12(II) gives the Board "exclusive powers" to "issue written decisions" and orders with respect to "any person in violation of [RSA 357-C]." N.H. Rev. Stat. Ann. § 357-C:12(II) (2009); see also [ECF No. 69 at 19]. And, RSA 347-C:12(VII) provides for appeals of the Board's decisions to New Hampshire superior courts, but also stipulates that "all findings of fact by the Board 'shall be prima facie lawful and reasonable[,]' '[n]o additional evidence shall be heard or taken by the superior court on appeals from the board,' and the 'decision appealed from shall not be set aside or vacated except for errors of law.'" TS & A Motors, LLC v. Kia Motors Am., Inc., 172 N.H. 94, 97–98 (2019) (quoting N.H. Rev. Stat. Ann. § 357-C:12(VII) (2009)).

Taken together, these provisions contemplate centralized administrative resolution of good cause determinations, other violations of RSA 357-C, and attendant factual issues, and the Court finds that resolving the proposed counterclaims would likely require resolving factual issues that overlap with the ongoing Board Proceedings. Issues in the Board Proceedings apparently include both "whether Kia has 'good cause' for termination" and whether Kia "violated the New Hampshire motor vehicle regulations in connection with its audits." [ECF No. 69 at 3–4]. Regardless of whether fraud is ultimately dispositive of the Board's good cause determination, the accuracy of the New Hampshire Entities' sales reports, which Kia evaluated in its audits, is relevant to the Board Proceedings. There are also clearly overlapping issues between Kia's proposed breach of contract counterclaim, and an issue Kia says the Board must address to evaluate good cause, that is, "whether [the New Hampshire Entities] failed to comply with a reasonable and material provision of the franchise." [ECF No. 69 at 24].

The resolution of these common issues also implicates "important questions of public policy[.]" Mulligan, 849 F. Supp. 2d at 174 (citing Chico Serv. Station, 633 F.3d at 32). RSA-C "was enacted [ ] to protect retail car dealers from perceived abusive and oppressive acts by the manufacturers[,]" TS & A Motors, 172 N.H. at 98 (citation and internal quotation marks omitted), which the New Hampshire Supreme Court has held, in evaluating the Senate Bill amending RSA 357-C to apply to farm and other equipment dealers, constitutes a "significant and legitimate public purpose." Deere & Co. v. New Hampshire, 168 N.H. 460, 473 (2015).

In determining whether abstention is warranted, courts also consider "the availability of timely and adequate state-court review . . . ." Mulligan, 849 F. Supp. 2d at 174 (citing Chico Serv. Station, 633 F.3d at 32). While Kia's proposed counterclaims are broader than the claims at issue in the Board Proceedings, which may weigh against abstention particularly when a dispositive decision is not imminent, the Court still finds that, on balance, abstention is appropriate, given the abbreviated case timeline. Cf. JLI Inv. S.A. v. Computershare Tr. Co., No. 15-cv-11474, 2016 WL 4775450, at *10 (D. Mass. Sept. 13, 2016) (finding Burford abstention was not appropriate, despite pending administrative proceedings, because the claims in the litigation were "substantially broader than the claims presented in [the administrative proceeding]," "involve[d] entirely different defendants[,]" and "allowing discovery to proceed in

9

Despite the substantial expansion that would result from adding the other proposed counterclaims against DMO Norwood and the Proposed Counterclaim Defendants, Kia asserts that the Court should nonetheless grant it leave to amend because its counterclaims are "arguably compulsory," which can weigh in favor of granting an amendment. [ECF No. 53 at 7 (citing Madico, Inc. v. GMX Performance Films, PTE, No. 06-cv-10953, 2009 WL 10692740, at *5 (D. Mass. Apr. 11, 2009) (citation omitted) and Cabana v. Forcier, 200 F.R.D. 9, 13 (D. Mass. 2001))]. It is not clear to the Court that Kia's proposed counterclaims would be compulsory, particularly where they pertain to separate Dealer Agreements between Kia and the New Hampshire Entities, which are not at issue in DMO Norwood's claims, and a much broader set of allegations of fraudulent conduct, but the Court need not reach that issue. The "key consideration" for the Court in exercising its discretion in this context is whether the non-moving party will face undue prejudice as a result of the amendment. See Nasson, 1994 WL 175049, at *1. The Court finds that Kia's proposed substantial expansion of the case would unduly prejudice DMO Norwood. The Court will therefore deny Kia leave to amend its Answer to add proposed Counterclaims One, Two, Three, Four, Five, and Six and the Proposed Counterclaim Defendants.

### III.    CONCLUSION

Accordingly, for the reasons set forth above, Kia's Motion to Amend, [ECF No. 52], is GRANTED as to Kia's proposed Counterclaim Seven against DMO Norwood, and is DENIED

---

th[e] matter pose[d] no threat to state administrative policymaking," but noting that "Court [was] willing to revisit the issue after the close of discovery, and prior to making a dispositive legal ruling.").

as to proposed Counterclaims One, Two, Three, Four, Five, and Six and Proposed Counterclaim Defendants Dan O'Brien, DMO Concord, and DMO North Hampton.

**SO ORDERED.**

February 15, 2023                                                         /s/ Allison D. Burroughs
                                                                          ALLISON D. BURROUGHS
                                                                          U.S. DISTRICT JUDGE