UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DMO NORWOOD LLC d/b/a Dan O'Brien Kia Norwood,<br><br>                  Plaintiff/Counterclaim Defendant,<br><br>    v.<br><br>Kia America, Inc.,<br><br>                  Defendant/Counterclaim Plaintiff. | Case No. 1:22-cv-10470-ADB |

**MEMORANDUM OF LAW IN SUPPORT OF
KIA AMERICA, INC.'S MOTION TO COMPEL**

Pursuant to Local Rules 7.1 and 37.1, and Fed. R. Civ. P. 7, 26 and 37, Defendant and Counterclaim Plaintiff Kia America, Inc. ("Kia"), by its undersigned attorneys, respectfully submits this motion to compel Plaintiff and Counterclaim Defendant DMO Norwood LLC d/b/a Dan O'Brien Kia Norwood ("Plaintiff" or "DMO Norwood") to:

(i) produce documents responsive to Kia's Requests for Production ("RFPs") No. 14, for Plaintiff's floorplan records; No. 15, for Plaintiff's new Kia vehicle inventory records; No. 5 (as narrowed by Kia during the meet and confer process) for certain documents concerning Plaintiff's reporting of new Kia vehicle sales to Kia; and No. 30, for Plaintiff's general ledgers;

(ii) fully answer Kia's Interrogatory No. 10, which asks Plaintiff to state the basis for its contention that each of the vehicles referred to in paragraphs 56 and 57 of Kia's Counterclaim were properly reported to Kia as sold.

Kia also requests that the Court order Plaintiff to pay Kia's attorneys' fees in connection with this motion pursuant to Fed. R. Civ. P. 37(a)(5).

## BACKGROUND

In January 2022, Kia issued notices of termination (the "NOTs") to three commonly owned Kia dealerships: DMO Norwood, DMO Concord, and DMO North Hampton. The NOTs resulted from audits and inventory inspections that Kia conducted at these three dealerships in 2021, during which Kia discovered that vehicles that the dealerships had previously reported as sold, and for which the dealerships had obtained thousands of dollars in sales incentive payments from Kia, were still on the dealership lots.

Plaintiff DMO Norwood brought this action challenging the termination as unlawful under various provisions of Mass. Gen. Laws ch. 93B and as a breach of the Kia Dealer Sales and Service Agreement (the "Dealer Agreement"). Similarly, DMO Concord and DMO North Hampton filed administrative protests with the New Hampshire Motor Vehicle Industry Board (the "Board") alleging that Kia violated various provisions of N.H. Rev. Stat. Ch. 357C, that state's motor vehicle franchise statute.

In its Complaint, DMO Norwood acknowledged that Kia found vehicles the dealership had previously reported as sold on the dealership lots but claimed that the false reports were "accidental." Compl. ¶ 78. In support, Plaintiff argued Kia found "just 16 vehicles over a two-year-period in which [DMO Norwood] sold approximately 2,000 vehicles" (*id.*) – ignoring the facts that (i) Kia based its conclusion on vehicles that happened to be on the dealership lots at the time of the audits, and that without additional information Kia would have no way of knowing whether DMO Norwood had made additional false sales reports over the prior two years for vehicles that had been removed from the lots; and (ii) Kia audited only 112 DMO Norwood transactions, not 2,000. *See id.* ¶¶ 39, 44.

As a result of document discovery in this case and the Board proceeding, Kia obtained evidence that the three DMO dealerships had engaged in widespread false reporting of sales and had attempted to cover up their activities by selling off the falsely reported vehicles to wholesalers prior to the audits. *See* Counterclaim, ¶¶ 40-46. Kia also conducted a follow-up audit of DMO Norwood, which uncovered additional falsely reported sales. *Id.* ¶ 52-55.

Accordingly, Kia filed a motion to amend its answer to assert Counterclaims against DMO Norwood and the two New Hampshire DMO dealerships to recover all incentive payments received by the dealerships from Kia for falsely reported vehicle sales. ECF Nos. 52-53. While the Court narrowed the requested Counterclaims and did not permit Kia to bring in the New Hampshire dealerships as additional parties, the Court granted Kia leave to assert a breach of contract Counterclaim against DMO Norwood to recover all incentive payments made to DMO Norwood for falsely reported vehicle sales. ECF No. 74.

## THE DISPUTED DISCOVERY REQUESTS

RFP Nos. 14, 15 and 30 are relevant and in fact critical to discovering the scope of DMO Norwood's false reporting.

RFP No. 14 seeks Plaintiff's floorplan records. Like all new vehicle dealers, Plaintiff maintained a floorplan with a financial institution through which it (i) borrowed the funds to purchase each new vehicle and (ii) was obligated to repay the floorplan lender promptly (i.e., usually within a few days) after the vehicle was sold. A comparison of Plaintiff's floorplan records to the Retail Delivery Reports ("RDRs") that Plaintiff submitted to Kia is likely to provide evidence of whether Plaintiff actually sold the vehicle at the time it was reported to Kia as sold – i.e., if the vehicle remained on Plaintiff's floorplan after Plaintiff reported it to Kia as sold, that is an indication that Plaintiff falsely reported the sale to Kia.

RFP No. 15 seeks Plaintiff's inventory records, i.e., "Records showing when each vehicle purchased by Kia Norwood entered into Kia Norwood's inventory and when each such vehicle left Kia Norwood's inventory." A comparison of Plaintiff's inventory records to the RDRs that Plaintiff submitted to Kia should provide evidence of whether the vehicle left Plaintiff's inventory at or about the time of the reported sale – i.e., if the vehicle remained in Plaintiff's inventory after the reported sale, that is an indication that Plaintiff falsely reported the sale to Kia.

In RFP No. 30, Kia requested "[a]ll general ledgers, all associated subsidiary ledgers, and any supporting documents for the balance sheet accounts from January 1, 2019 through the present, including any translation tables identifying the VINs associated with each vehicle stock number." Kia seeks DMO Norwood's general ledgers in order to compare Kia's records of when DMO Norwood reported vehicles as sold with DMO Norwood's internal records regarding its sales, and assess whether there are discrepancies. It is common for dealerships to rely upon computer systems, referred to as Dealer Management Systems ("DMS"), to maintain their records. When a dealership buys or sells a vehicle, the DMS makes entries in the dealership's general ledger to record and account for the transaction. These accounting records reflect, among other things, the date of the transaction and a unique identifier for the vehicle ("Stock Number") involved in the transaction. While Kia has monthly financial statement reports generated from this underlying DMS data, these reports only reflect total new vehicle inventory counts and do not provide detail for individual vehicles. The general ledger information underlying these inventory reports will allow Kia to compare transaction dates in the RDR data to transaction dates DMO Norwood recorded within its own DMS. Kia also seeks from DMO Norwood a translation of its Stock Numbers to VINs to allow a comparison of the two datasets.

3

In RFP No. 5, Kia requested "[a]ll documents concerning the reporting of vehicle sales to Kia for purposes of receiving incentives through any Kia Incentive Programs." In response to Plaintiff's objection that the request was overly broad, Kia narrowed its request during the meet and confer process to documents related to Plaintiff's claim that the false reporting was the result of good faith errors. Accordingly, Kia is requesting documents concerning: (1) whether the criteria for submitting an RDR under Kia's Sales Policy are satisfied; (2) whether it is proper to submit an RDR where there is no agreement or purchase order signed by the customer; (3) the application of the Rule of Four in Kia's Sales Policy (i.e., a rule that Kia claims was violated by Plaintiff); and (4) any DMO Norwood employees' knowledge of whether the submission of, or failure to unwind, any RDR violated Kia's Sales Policy. *See* Ex. 8 at 2.

Finally, Kia's Interrogatory No. 10 asked: "For each of the VINs referenced in paragraphs 56-57 of the Counterclaim, state the basis for your contention that the vehicle was properly reported to Kia as sold." The answer to this question is obviously relevant to the Complaint and the Counterclaim.

DMO Norwood's refusal to produce the foregoing documents and information—including floorplan and inventory records, which are particularly critical for Kia's expert reports—is prejudicial to Kia's prosecution of its Counterclaim and ability to defend against DMO Norwood's claims. In light of the upcoming September 18, 2023 deadline for expert disclosures and October 2, 2023 deadline for completing fact discovery, Kia respectfully requests that the Court intervene and compel DMO Norwood to produce the requested documents and information.

## **KIA'S MEET-AND-CONFER EFFORTS**

In order to complete discovery by May 1, 2023—as required by the Court's February 24 order approving the parties' joint proposed schedule (*see* ECF Nos. 78-79)—Kia reached out to

DMO Norwood's then counsel of record on March 6 in attempt to resolve outstanding discovery issues. Ex. 4. Kia's email emphasized that it had successfully moved to compel the production of some of the same documents and information in the Board proceeding that DMO Norwood was refusing to produce, including floorplan and inventory records. Kia stated its intention to move to compel if DMO Norwood did not commit to producing those records by March 10. *Id.* DMO Norwood's counsel waited to respond until March 11, and stated that they had been "tied up on some other matters this week and are still working through these and other issues with our client. We will respond in the upcoming week." *Id.* As the following week came to an end, Kia's counsel followed up again on Thursday, March 16 stating: "Given the current schedule, we need a response to our email by the end of the day tomorrow." *Id.* DMO Norwood's counsel responded the next day that they were "waiting on direction from our client" who "has been traveling and is returning this weekend." *Id.* On March 22, Kia demanded a response by March 23 at noon, stating that "[i]f we do not receive a response by then, we will assume that plaintiff is refusing to produce any of the documents and information requested in our email and will proceed with a motion to compel." *Id.* Kia received no response on March 23.

Instead, DMO Norwood's counsel responded on March 24 stating that "[a]n issue has come up that I need to discuss with you and it is important that we talk before you file your motion to compel." *Id.* During that call, DMO Norwood's counsel explained that DMO Concord and DMO North Hampton's counsel in the Board Proceeding would be substituted as counsel for DMO Norwood, and requested that Kia wait to file its motion to compel until after the substitution of counsel was effectuated. Mendelsohn Decl. ¶ 2. Kia agreed to do so as a professional courtesy. *Id.* DMO Norwood's counsel still did not state whether or not DMO Norwood would produce any of the documents or information referenced in Kia's March 6 email. *Id.*

5

Immediately thereafter, Kia sent an email to DMO Norwood's new counsel (Burns Levinson) forwarding the extensive email correspondence with prior counsel, beginning with Kia's March 6 request for confirmation of whether DMO Norwood would produce floorplan and inventory records, among other things. Ex. 5. Kia explained to Burns Levinson that while it would not file its motion to compel until the substitution of service is effectuated, it "cannot wait much longer given the April 17 deadline for expert reports and May 1 deadline for fact depositions." *Id.* On March 27, Burns Levinson responded that they were "still working to get up to speed" and requested a call to discuss "outstanding discovery issues and the case schedule." *Id.* During that call, the parties discussed the extension of the case schedule but DMO Norwood's counsel did not provide any answers as to the outstanding discovery issues. Mendelsohn Decl. ¶ 3.

On April 18, Kia again followed up with DMO Norwood as to whether it would produce DMO Norwood's floorplan and inventory records, particularly in light of the fact that DMO Concord and DMO North Hampton (also represented by Burns Levinson) were unsuccessful in opposing Kia's motion to compel the production of the same category of documents in the Board proceeding. Ex. 6. Kia received no response to this email. Accordingly, on April 24, Kia's counsel sent DMO Norwood's counsel a letter listing the deficiencies in DMO Norwood's discovery responses, and demanding an answer by April 28 to the straightforward question of whether DMO Norwood would produce floorplan and inventory records. Ex. 7. On April 27, DMO Norwood's counsel responded that "[w]e understand that you had requested a response to certain issues raised by tomorrow. However, our client Dan O'Brien has been out of the country this week because it is NH school vacation week, so we have not been able to address the issues

identified in your letter. We will provide a substantive response to all issues raised by Friday, May 5th." Ex. 8.

Kia responded the same day setting out the history of DMO Norwood's evasion of the "simple question of whether DMO Norwood will produce a discrete set of documents," and reiterated that if Kia did not have an answer by the close of business on April 28, it would move to compel. *Id.* DMO Norwood's counsel responded on the afternoon of April 28 with yet another set of excuses: "Mr. O'Brien is out of the country until Monday" and "Paul, Greg and I . . . will be in Florida at the beginning of next week attending the National Association of Dealer Counsel's conference." *Id.* They promised that they would "speak with Mr. O'Brien and his in house counsel next week . . . to finalize DMO Norwood's position on the issues identified in your April 24th letter." *Id.* Based on this representation, Kia responded that "[a]s yet another courtesy, we will wait to file our motion to compel until you have provided a written response on May 5th." *Id.*

Unfortunately, DMO Norwood's long-awaited May 5 response confirmed that "DMO will not be producing floorplan and inventory records as requested." Ex. 9. The response did not articulate the basis for DMO Norwood's refusal, apart from referencing its prior objections and reserving the right to raise new arguments in response to a motion to compel. *Id.* On May 8, Kia met and conferred with DMO Norwood on remaining discovery issues, and on May 12, DMO Norwood confirmed its position as to the final remaining discovery issues by email. Ex. 10. *See also* Mendelsohn Decl. ¶ 4.

## LEGAL STANDARD

The Federal Rules of Civil Procedure generally allow for broad discovery, authorizing parties to "obtain discovery of any nonprivileged matter that is relevant to any party's claim or defense . . . ." *Powers v. Santander Consumer USA, Inc.*, No. 12-11932-TSH, 2014 WL 775464, at *2 (D. Mass.

Feb. 24, 2014) (quoting Fed. R. Civ. P. 26(b)(1)) (internal quotations omitted). *See also Majors v. Time Warner Cable, Inc.*, No. 3:16-CV-11399-MGM, 2017 WL 2836995, at *3 (D. Mass. June 30, 2017) (referring to the "liberal construction of relevancy that controls in the discovery stage"). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Powers*, 2014 WL 775464, at *2 (citations omitted). A party seeking discovery may move to compel if a party fails to produce documents requested under Fed. R. Civ. P. 34 or to answer interrogatories submitted under Fed. R. Civ. P. 33. *See* Fed. R. Civ. P. 37(a)(3)(B).

Although the initial burden is on the party seeking discovery to demonstrate "the possibility of relevance," the party resisting discovery ultimately bears the burden of demonstrating why it should not be required to produce the requested discovery:

> The party seeking discovery over the opposing party's objection has the initial burden of demonstrating the relevance of the requested information. *See Diaz-Padilla v. Bristol Myers Squibb Holding Ltd. Liability Co.*, Civil No. 04-1003 (PG/GAG), 2005 WL 783076, at *2 (D.P.R. Apr. 4, 2005) (citing *Caouette v. Office Max, Inc.*, 352 F. Supp. 2d 134, 136 (D.N.H. 2005)). This burden is not onerous. Once the possibility of relevance is shown, the burden shifts to the party opposing disclosure to show that the discovery is improper. *See id.* (citing *Condit v. Dunne*, 225 F.R.D. 100, 106 (S.D.N.Y. 2004)); *see also BPP Retail Props., LLC v. N. Am. Roofing Servs., Inc.*, 300 F.R.D. 59, 61 (D.P.R. 2014) (the party resisting discovery has the burden of showing specifically how the documents requested are not relevant or how the request at issue is overly broad, burdensome, or oppressive). "Relevance under Rule 26(b) is broadly defined, 'although it is not without ultimate and necessary boundaries.' " *Ogden v. Bumble Bee Foods*, 292 F.R.D. 620, 622 (N.D. Cal. 2013) (quoting *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006)). The party resisting discovery "bears the burden of establishing that compliance with the request is unduly burdensome." *Hennigan v. Gen. Elec. Co.*, No. 99-11912, 2010 WL 4189033, at *3 (E.D. Mich. Aug. 3, 2010).

*Aronstein v. Massachusetts Mut. Life Ins. Co.*, No. CV 15-12864-MGM, 2017 WL 2818993, at *2 (D. Mass. June 29, 2017).

**ARGUMENT**

**I.      DMO Norwood Should Be Compelled to Produce Responsive Documents.**

Kia submits that it has demonstrated above not only the possibility but the probability of relevance of RFP Nos. 5, 14, 15, and 30.

Plaintiff objected to producing any records in response to RFP Nos. 14, 15, and 30 on the ground that they sought information about potential false sales reporting beyond the vehicles that were found on Plaintiff's lot during the 2021 audit and which were the basis for the NOT. *See* Ex. 1 at 13-14; Ex. 2 at 4-5. Such information, however, is relevant to Plaintiff's contention that the falsely reported sales that Kia did find were simply the result of good-faith errors on Plaintiff's part rather than part of a scheme to obtain incentive payments that Plaintiff had not earned. Moreover, the information is directly relevant to Kia's Counterclaim to recover all amounts it paid to DMO Norwood for falsely reported sales.

DMO Norwood also objected to RFP Nos. 14 and 30 on the grounds that they seek "confidential" information. *See* Ex. 1 at 13; Ex. 2 at 4-5. Even assuming (while disagreeing) that there is anything "confidential" about when a dealer sells a particular vehicle, any confidentiality concerns are addressed by the confidentiality order issued in this case. ECF No. 77. In addition, Kia has the <u>right</u> under Article IX.A.6 of the Dealer Agreement "to examine . . . and reproduce all records, accounts and supporting data relating to the Kia dealership operations of DEALER including without limitation, the sale, sales reporting, service and repair of Kia Products by DEALER." ECF No. 13-1. In other words, as between DMO Norwood and Kia, these records are not "confidential" in the first place.

DMO Norwood has also objected to RFP No. 15 on the ground that it "violate[s] the protections of M.G.L. c. 93B, § 9(c), which limits the scope of audits by manufacturers." Ex. 1 at

9

14. Kia, however, is not conducting an audit but rather discovery under the Federal Rules of Civil Procedure. Kia is entitled to relevant documents and information under those Rules.

As mentioned above, the New Hampshire Board has rejected the same objections asserted by Plaintiff's affiliated dealerships to production of floorplan and inventory records and general ledgers. And that case involves only whether Kia has good cause to terminate; there is no Counterclaim by Kia to recover incentive payments on falsely reported vehicles (as the Board would have no jurisdiction over such a counterclaim).

RFP No. 5, as narrowed, seeks information relevant to Plaintiff's claim that its falsely reported sales were simply the result of good-faith errors. *See* Ex. 8 at 2. DMO Norwood has again objected to producing any documents other than those relating to the false sales reports identified in the NOT and Counterclaim. *See* Ex. 10. But Kia is entitled to any documents that relate to DMO Norwood's understanding of Kia's sales reporting rules and its knowledge as to whether it was violating those rules.

Finally, DMO Norwood has objected to all of these requests on grounds of undue burden. *See* Ex. 1 at 7, 13-14; Ex. 2 at 4. But the requests ask for specifically identifiable and readily retrievable records, in particular the floorplan and inventory records and general ledgers.

## II. DMO Norwood Should Be Compelled To Answer Interrogatory No. 10, Which Simply Asks DMO Norwood To Explain Why It Contends That the RDRs At Issue Were Properly Submitted.

Kia's Interrogatory No. 10 asked: "For each of the VINs referenced in paragraphs 56-57 of the Counterclaim, state the basis for your contention that the vehicle was properly reported to Kia as sold." With respect to the vehicles identified in paragraph 56, DMO Norwood answered by merely referring to the paperwork DMO Norwood maintained for each of the purported sales. *See* Ex. 3 at 5. That does not answer the question. To the contrary, those documents reflect that

in many cases, DMO Norwood submitted RDRs for "retail" sales where there was no signed contract with the customer. Moreover, "Federal Rule of Civil Procedure 33 requires that each interrogatory be answered separately and fully and not by simply referring to other documents or pleadings." *Conning v. Halpern*, No. 18-CV-12336-ADB, 2021 WL 24573, at *5 (D. Mass. Jan. 4, 2021) (Burroughs, J.). The Rule also requires that such answers be given under oath. Fed. R. Civ. P. 33(b)(3).

Kia is entitled to understand DMO Norwood's position as to why the RDRs at issue were properly submitted, and why DMO Norwood contends that Kia's reversal of the incentive payments was improper.[1] DMO Norwood's response fails to state, for example, whether all of the requirements of Section 1.3(C) of Kia's Sales Policy were satisfied as to each vehicle, including whether an Eligible Customer signed an enforceable sales or lease contract for each vehicle. If no signed sales or lease contract exists for a particular vehicle, DMO Norwood should be required to admit that fact in response to the interrogatory, and explain why the vehicle was nevertheless properly reported as sold. Or, if DMO Norwood concedes the vehicles were not properly submitted, it should be required to state that in response to the interrogatory.

As to the vehicles referenced in paragraph 57, DMO Norwood only explained why it classified these vehicles as "retail" sales when they were RDR'd. However, DMO Norwood did not offer any explanation of why submitting RDRs for these vehicles was proper under Kia's Sales Policy, including Section 1.3(E), which expressly states that a dealer is not eligible for incentive payments if it reports more than four vehicles as sold to the same Dealer Affiliate in the same

---

[1] Kia served interrogatory responses in the Board proceeding explaining in detail the basis for its contention that the vehicles at issue in that case were associated with fraud on the part of DMO Concord and DMO North Hampton, and will soon do the same as to the vehicles referenced in the Counterclaim in this proceeding.

11

month, as DMO Norwood did here. DMO Norwood should be required to explain why it was proper to submit RDRs for these vehicles (particularly given the Rule of Four) and why it was improper for Kia to reverse the incentive payments.[2]

### III. The Court Should Require DMO Norwood To Pay Kia's Attorneys' Fees.

Fed. R. Civ. P. 37(a)(5) states that if a motion to compel is granted, or "if the disclosure or requested discovery is provided after the motion was filed," "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." The rule identifies three exceptions where "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." None of these exceptions apply here.

Prior to filing this motion, Kia attempted in good faith to resolve these disputes without the Court's intervention, including through extensive email correspondence and meet-and-confers. DMO Norwood has no legitimate basis to withhold the requested documents or to refuse the discovery requests at issue in this motion. Moreover, DMO Norwood engaged in dilatory tactics, stringing Kia along with a litany of excuses as to why it needed additional time to answer the simple question of whether it would produce floorplan and inventory records. Kia had to follow up repeatedly, and extended multiple professional courtesies, only for DMO Norwood to finally

---

[2] In its May 5 letter response regarding its discovery responses, DMO Norwood referred to prior correspondence from DMO Norwood to Kia that purportedly answer the question. These letters contain no explanation whatsoever as to why the 23 RDRs were properly submitted in compliance with the Sales Policy or why it was improper for Kia to reverse the incentive payments for these vehicles. Ex. 9. Moreover, Kia is entitled to an answer made under oath.

confirm that it would not produce the documents (with minimal explanation provided). Therefore, Kia requests that the Court order DMO Norwood to pay Kia's reasonable attorneys' fees incurred in connection with its motion to compel. *See Conning*, 2021 WL 24573, at *5 (non-movant ordered to pay fees for motions to compel based on "dilatory and obstructionist tactics," including insufficient interrogatory responses and refusal to produce certain documents). *See also DiLeo v. United Rentals (N. Am.), Inc.*, No. 15-CV-40157-TSH, 2018 WL 3352967, at *3 (D. Mass. July 9, 2018) (non-movants ordered to pay fees for motion to compel based on failure to timely respond to request for production of documents and non-movant's failure "to meet the extended deadlines that they themselves had proposed" after movant's "extensive, patient, and professional email correspondence" in attempt to avoid motion practice).

## CONCLUSION

For the foregoing reasons, Kia respectfully requests that the Court grant this motion and order DMO Norwood to fully respond to Requests for Production Nos. 5 (subject to Kia's agreed limitations), 14, 15 and 30, and Interrogatory No. 10, to pay Kia's attorneys' fees in connection with this motion, and grant such further relief as the Court deems appropriate and just.

Date: May 17, 2023

                                              */s/ James G. McGovern*
                                              James G. McGovern
                                              John J. Sullivan
                                              Alan M. Mendelsohn
                                              *(Admitted pro hac vice)*
                                              Hogan Lovells US LLP
                                              390 Madison Avenue
                                              New York, New York 10017
                                              Tel:  (212) 918-3000
                                              james.mcgovern@hoganlovells.com
                                              john.sullivan@hoganlovells.com
                                              alan.mendelsohn@hoganlovells.com

Anthony E. Fuller (BBO #633246)
Kayla H. Ghantous (BBO #709197)
Hogan Lovells US LLP
125 High St., Suite 2010
Boston, MA 02110
Tel: (617) 371-1000
anthony.fuller@hoganlovells.com
kayla.ghantous@hoganlovells.com

*Attorneys for Defendant Kia America, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2023, I filed the foregoing document through the Court's ECF system, which will cause copies of the document to be sent electronically to the registered participants as identified on the Notice of Electronic Filing, including Plaintiff's counsel.

>                                   */s/ Kayla H. Ghantous*
>                                   Kayla H. Ghantous