UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DMO NORWOOD LLC d/b/a Dan O'Brien Kia Norwood,<br><br>    Plaintiff,<br><br>v.<br><br>KIA AMERICA, INC.,<br><br>    Defendant. | No. 22-cv-10470-ADB |

**ORDER ON DEFENDANT'S MOTION FOR ATTORNEY'S FEES**

Cabell, U.S.M.J.

## I.   INTRODUCTION

This action arises from the dissolution of a relationship between DMO Norwood LLC ("the plaintiff" or "DMO Norwood"), a motor vehicle dealership, and Kia America, Inc. ("the defendant" or "Kia"), a motor vehicle distributor, following Kia's audits of the plaintiff's compliance with Kia's sales incentive programs.  The plaintiff asserts that the defendant conducted these audits and terminated the parties' Dealer Agreement in retaliation for the plaintiff's withdrawal from a voluntary marketing program.  The defendant, via a counterclaim for breach of contract, asserts that the plaintiff breached the Dealer Agreement by improperly reporting certain vehicles as sold and thereby collecting unearned sales incentives.

Earlier in this litigation, the defendant moved to compel the plaintiff to respond to four requests for the production of documents ("RFPs") and one interrogatory. (Dkt. No. 97). The plaintiff opposed. (Dkt. No. 100). After considering the parties' arguments, this court granted the defendant's motion in a written order. (Dkt. No. 105); *DMO Norwood LLC v. Kia Am., Inc.*, --- F. Supp. 3d ---, 2023 WL 5353744 (D. Mass. 2023). In that order, this court expressed doubt as to whether the plaintiff's resistance to responding to the RFPs was substantially justified such that an award of fees would be inappropriate.[1] (Dkt. No. 105, p. 15); *see* Fed. R. Civ. P. 37(a)(5)(A)(ii). The court directed the defendant to "submit documentation reflecting the fees it incurred in seeking the contested documents" if it wished to pursue a fee award. (*Id.*). The court also indicated that the plaintiff could file a supplemental brief explaining why its position was substantially justified. (*Id.* at pp. 15-16). The defendant has since filed the instant motion for fees (Dkt. No. 119) and supporting materials, while the plaintiff has filed an opposition (Dkt. No. 125) further explaining the basis for its position on the RFPs. For the following reasons, the court finds that an award of fees is appropriate in this case.

---

[1] The court concluded that the plaintiff's objection to the contested interrogatory was substantially justified. (Dkt. No. 105, p. 15).

## II. LEGAL STANDARD

When a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).  However, "the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii).  "A substantial justification is one that 'could satisfy a reasonable person.'"  *Pan Am. Grain Mfg. Co. v. P.R. Ports Auth.*, 295 F.3d 108, 117 (1st Cir. 2002) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

## III. DISCUSSION

### A.  Appropriateness of Fee Award

As discussed more fully in the order granting the motion to compel, the plaintiff's resistance to the contested RFPs was based on its belief that the "charge back" procedures set out in M.G.L. c. 93B ("Chapter 93B") foreclosed the defendant from obtaining discovery on any vehicles that were not included in the two audits the defendant conducted of the plaintiff's inventory.  This court

3

disagreed, noting that the court had already ruled that the defendant could assert a counterclaim for common law breach of contract and that nothing in Chapter 93B purported to limit the scope of discovery for such a counterclaim.  (Dkt. No. 105, pp. 9-11).

In its opposition to this motion, the plaintiff explains that, when the defendant served the contested RFPs, there was as yet no counterclaim for breach of contract.  The plaintiff thus objected to producing discovery concerning any vehicles that were not identified in the notice of termination the defendant provided when it terminated their business relationship, as the only claim in the case at that time concerned the legitimacy of that termination.  The plaintiff purportedly relied on a decision of the Massachusetts Superior Court in *Planet Subaru Inc. et al v. Subaru of New England, Inc.*, Civil Action No. 2010-743-BLS2 (Mass. Super. Ct. Apr. 18, 2011),[2] finding that the reasonableness of a distributor's decision to terminate its relationship with a dealer depends on what the distributor knew at the time of the decision.[3]

The plaintiff's explanation for objecting to the RFPs is reasonable as it relates to the plaintiff's own Chapter 93B claims.

---

[2] The plaintiff attached this decision as an exhibit to its opposition to the instant motion.  (Dkt. No. 125-1).

[3] Notably, it does not appear that the distributor in *Planet Subaru* asserted any counterclaims against the dealer, including any counterclaim for breach of contract.

4

Importantly, though, the defendant subsequently filed its counterclaim for breach of contract. (Dkt. No. 80). As this court noted in its previous order, the contested RFPs were facially relevant to that counterclaim. (Dkt. No. 105, p. 8). Nonetheless, the plaintiff continued to object to the RFPs. The defendant filed its motion to compel over three months after filing the counterclaim. (Dkt. No. 97).

The plaintiff's explanation for why it did not drop its objections after the counterclaim was filed is simple: the plaintiff maintains that Chapter 93B precludes the defendant from asserting a common law breach of contract counterclaim even though the court has ruled to the contrary. (Dkt. No. 125, pp. 4-7). The court granted the defendant leave to file its breach of contract counterclaim in a written order. (Dkt. No. 74). In that order, the court recognized that "Massachusetts courts do not appear to have resolved whether a [distributor] is preempted from bringing related common law claims in addition to c[h]. 93B claims." (*Id.* at p. 8 n.4) (second alteration in original) (quoting *Aston Martin of Lagonda of N. Am., Inc. v. Lotus Motorsports, Inc.*, Civil Action No. 13-11213-DJC, 2014 WL 1092864, at *5 (D. Mass. Mar. 18, 2014)). The court decided that, since there was no authority indicating that Chapter 93B precluded common law claims, it would not deny the defendant leave to assert its breach of contract counterclaim on that ground. (*Id.*). Thus, the

5

law of the case as it stands is that the defendant can assert its breach of contract counterclaim. *See United States v. Matthews*, 643 F.3d 9, 12 (1st Cir. 2011) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)) ("Writ large, the law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'").

The plaintiff had viable options to revisit the court's ruling. It could have filed a motion to reconsider the allowance of the counterclaim or it could have filed a motion to dismiss the counterclaim. It chose neither. Instead, despite the court's order allowing the breach of contract counterclaim to proceed, the plaintiff withheld discoverable materials based on its own untested belief that the counterclaim was legally untenable. It was not reasonable for the plaintiff to withhold documents based on its own view of the law when the court had already made a contrary ruling and the plaintiff had opted not to challenge that ruling. *See Amoah v. McKinney*, Civil Action No. 14-40181-TSH, 2016 WL 6134119, at *4 (D. Mass. Sept. 2, 2016) (finding plaintiff was not substantially justified in "relying on his unilateral interpretation" of a court order despite notice that order did not support his position).

The plaintiff's continued objection to the contested RFPs in the face of the counterclaim was unreasonable in that it

6

essentially ignored an order of the court, and therefore it was not substantially justified. *See Pan Am. Grain Mfg. Co.*, 295 F.3d at 117. Further, because the court is satisfied that the defendant attempted in good faith to obtain the discovery before filing the motion to compel, and there do not appear to be any other circumstances that would make an award of expenses unjust, *see* Fed. R. Civ. P. 37(a)(5)(A)(i) & (iii), the court is bound to award expenses to the defendant. Fed. R. Civ. P. 37(a)(5)(A) (court "must" require payment of the movant's expenses).

### B.  Calculation of Fee Award

What remains is to determine the appropriate award of expenses. In fixing such awards, courts in this district employ the lodestar method, which is "the gold standard for calculating fee awards." *Spooner v. EEN, Inc.*, 644 F.3d 62, 67 n.3 (1st Cir. 2011). "This approach requires the district court to ascertain the number of hours productively expended and multiply that time by reasonable hourly rates." *Id.* at 68 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)) (further citation omitted). "[T]he court determines how much compensable time counsel spent on the case, deleting any duplicative, unproductive, or excessive hours[, . . . and] then applies prevailing rates in the community to arrive at the lodestar." *Id.* (internal quotation marks and citation omitted).

7

As directed, the defendant submitted a declaration and two attached exhibits documenting the time its counsel spent preparing the motion to compel and the amounts billed for that time. (Dkt. No. 122). Those documents show that a senior associate spent approximately 16 hours working on the motion and that a partner spent 3.9 hours on the same motion.[4] The associate had eight years of litigation experience; the partner had over 40. Counsel billed the defendant at a rate of $735 an hour for the associate's time and $1,085 an hour for the partner's time.

The court finds that it was reasonable for counsel to spend a total of 19.9 hours working on the motion to compel. The court is likewise satisfied that counsel's rates are essentially equivalent to the prevailing rates in Boston for counsel of similar experience.[5] This conclusion is buttressed by the fact that the plaintiff did not contest the reasonableness of either the time expended on the motion to compel or the amounts billed after having an opportunity to review the supporting documentation.

---

[4] Counsel billed the defendant for its work in "blocks" of time. As noted in the supporting declaration, the blocks during which the associate worked on the motion to compel total 25.40 hours, but some of those blocks also include work performed on other tasks not related to the motion. The court agrees that the defendant's estimate of 16 hours spent on the motion itself is reasonably accurate based on the billing records.

[5] Attached to its declaration, counsel submitted a chart displaying the average billing rates at its firm and at comparable Boston firms alongside the rates for the two attorneys who worked on the motion to compel. (Dkt. No. 122-2). The court found this to be a helpful illustration.

Notwithstanding the foregoing, there is one snag in the defendant's request for fees. The plaintiff's objections to the contested interrogatory, unlike its objection to the RFPs, were substantially justified, and so the court cannot award the defendant fees for its work in compelling an answer to the interrogatory. *See* Fed. R. Civ. P. 37(a)(5)(A)(ii). Nonetheless, the defendant asserts that it should receive its full expenses in connection with the motion because "the amount of time incurred in making the motion would have been substantially the same with or without the request to compel an answer to the interrogatory." (Dkt. No. 120, pp. 7-8). The defendant asserts that its position is buoyed as a matter of equity by its decision to abstain from seeking fees for the time it spent trying to obtain the contested documents prior to the motion to compel.

The defendant's argument is not without some merit. In other contexts, a full award of fees may be (but is not always) appropriate even when the movant does not prevail on every aspect of the litigation. *See Hensley*, 461 U.S. at 435-36 (discussing when a reduced fee award is appropriate); *Hulex Music v. Santy*, 698 F. Supp. 1024, 1034 (D.N.H. 1988) (declining to reduce fee award by 20 percent where plaintiff prevailed on four of five counts). Here, though, Rule 37 counsels against a full award. If the defendant had only moved to compel an answer to the contested interrogatory, the plaintiff's substantially justified objection

9

would have barred the defendant from collecting its expenses entirely. Fed. R. Civ. P. 37(a)(5)(A) (court "must not order . . . payment" if objection was substantially justified).  This mandatory bar should not be lifted simply because fees are warranted as to another part of the motion.

The motion to compel involved two distinct arguments: one regarding the RFPs and one regarding the interrogatory. (Dkt. No. 98, pp. 9-12).  The court will therefore reduce the defendant's requested award of $15,991.50 by 50% to $7,995.75.[6]

## IV. CONCLUSION

For the foregoing reasons, the defendant's motion for attorney's fees is ALLOWED.  The plaintiff shall remunerate the defendant in the amount of $7,995.75.

<u>So Ordered</u>.                          /s/ Donald L. Cabell
                                        DONALD L. CABELL, U.S.M.J.

DATED:  December 7, 2023

---

[6] The defendant's argument that less than two pages of its 13-page memorandum in support of the motion to compel were devoted to the contested interrogatory is not well taken.  While it is literally accurate that only about one and a half pages of the memorandum's argument section are dedicated to the interrogatory, the entire argument section is only four and a half pages.  The discussion of the RFPs takes up just under two pages, with the remainder focusing on the issue of fees. (Dkt. No. 98, pp. 9-13).  The fact that the section about the RFPs and the section about the interrogatory were nearly the same length supports the notion that neither was substantially more significant than the other.